**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | |
| REVOLUTION MONITORING, LLC | § | Case No. 18-33730-hdh |
| | § | |
| REVOLUTION MONITORING | § | Case No. 18-33731-hdh |
| MANAGEMENT, LLC | § | |
| | § | |
| REVOLUTION NEUROMONITORING LLC | § | Case No. 18-33732-hdh |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | |

| | | |
|---|---|---|
| MEDARC, LLC, as Collection Agent for Jeffrey | § | |
| H. Mims, Trustee of the Liquidating Trust of | § | |
| Revolution Monitoring, LLC, Revolution | § | |
| Monitoring Management, LLC, and Revolution | § | |
| Neuromonitoring, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 3:20–CV–_____ |
| | § | |
| THE HARTFORD FINANCIAL SERVICES | § | |
| GROUP, INC., HEALTHSMART CARE | § | |
| MANAGEMENT SOLUTIONS, L.P., | § | |
| NATIONAL HEALTH FINANCE, DM, LLC, | § | |
| MEDICA HEALTH MANAGEMENT, LLC, | § | |
| HEALTHSCOPE BENEFITS, INC., BOON- | § | |
| CHAPMAN BENEFIT ADMINISTRATORS, | § | |
| INC., and DOES 1-10, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I. INTRODUCTION

1.      This is an action by MedARC, LLC ("Plaintiff" or "MedARC"), in its capacity as

collection agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring,

LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (collectively "Revolution" or "Debtors"), seeking to recover from certain health insurance carriers for failure to properly reimburse Revolution for medical services rendered to insured patients. Revolution obtained assignments of benefits from its patients, who are the insureds of the Defendant[s] named below. Revolution provided medical services to those patients for the claims at issue between November 2015 and April 2017. Revolution then properly and timely submitted claims for reimbursement to Defendant[s] or their agents/administrators for the services it provided. Defendant[s] failed to properly reimburse Revolution pursuant to the terms of the employee benefit plans or insurance contracts covering those patients for the services that Revolution rendered. Defendant[s] failure to reimburse spanned over a period of approximately two years, covering approximately 12 claims and approximately $749,454.00 in rendered medical services.

2.      As explained more fully below, Debtors' Second Joint Plan of Reorganization (No. 3:18-bk-33730, ECF. No. 139) and Plan Supplement (No. 3:18-bk-33730, ECF No. 146) granted the Plaintiff standing to pursue Debtors' assigned claims against these Defendant[s] to seek compensation for the services Revolution rendered and which Revolution (and Revolution's Liquidating Trust) are owed under the health benefit plan.[1]

## II. THE PARTIES

3.      Plaintiff serves as the Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC, pursuant to the Bankruptcy Plan and Plan Supplement.

---

[1] The Revolution Monitoring, LLC bankruptcy petition was filed in the Northern District of Texas on September 27, 2018, and it is currently pending as No. 3:18-bk-33730. The Revolution Monitoring Management bankruptcy petition was filed in the Northern District of Texas on October 5, 2018, and it is currently pending as No. 3:18-bk-33731. The Revolution Neuromonitoring, LLC bankruptcy petition was filed in the Northern District of Texas on October 5, 2018, and it is currently pending as No. 3:18-bk-33732.

Plaintiff is a limited liability company organized in the State of Texas with its principal place of business at 3400 Carlisle, No. 550, Dallas, Texas 75204, which is located in the Northern District of Texas.

4.      Prior to its bankruptcy, Revolution Monitoring LLC was a limited liability company organized in the State of Texas and its offices were located in 4925 Greenville Ave., Suite 200, Dallas, TX 75206, which is located in the Northern District of Texas. Revolution Monitoring, LLC's current principal place of business is 6437 Southpoint Dr., Dallas, TX 75248, which is located in the Northern District of Texas. Revolution Monitoring Management LLC and Revolution Neuromonitoring LLC are affiliates of Revolution Monitoring LLC and both limited liability companies organized in the State of Texas and are affiliates of Revolution Monitoring, LLC.

5.      Defendant The Hartford Financial Services Group, Inc. ("Defendant" or "The Hartford") is a corporation organized in the State of Delaware with its principal place of business in Hartford, Connecticut. Defendant does not maintain an agent for service of process in Texas. Its registered agent, CT Corporation System, may be served with process at 67 Burnside Avenue, East Hartford, Connecticut  06108.

6.      Defendant HealthSmart Care Management Solutions, L.P. ("Defendant" or "HealthSmart") is a limited partnership organized in the State of Texas. Its registered agent, CT Corporation System, may be served with process at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7.      Defendant National Health Finance, DM, LLC ("Defendant" or "National") is a limited liability company organized in the State of Arizona. Defendant does not maintain an agent for service of process in Texas. Its registered agent, Ryan Holzer, may be served with process at 1347 N. Alma School Rd., Suite 150, Chandler, Arizona  85224.

8.      Defendant Medica Health Management, LLC ("Defendant" or "Medica") is a limited liability company organized in the State of Minnesota. Defendant does not maintain an agent for service of process in Texas. Defendant may be served through an officer of the LLC authorized to accept service of process at its business address of 120 Fifth Avenue, Pittsburgh, Pennsylvania 15222.

9.      Defendant HealthSCOPE Benefits, Inc. ("Defendant" or "HealthSCOPE") is a corporation organized in the State of Delaware with its principal place of business in Little Rock, Arkansas. Its registered agent, the Commissioner of Insurance, may be served with process at 333 Guadalupe Street, Austin, Texas 70781.

10.     Defendant Boon-Chapman Benefit Administrators, Inc. ("Defendant" or "Boon-Chapman") is a corporation organized in the State of Texas with its principal place of business in Austin, Texas. Its registered agent, Kevin Chapman/Allana Williams, may be served with process at 9401 Amberglen Blvd Building I, Suite 100, Austin, Texas 78729.

11.     Defendants Doe 1 through Doe 10 ("Doe Defendants") are companies the identities of which are not yet known to Plaintiff. The exact number of Doe Defendants is currently unknown to Plaintiff and may prove to be more or less than ten. Upon information and belief, Defendants The Hartford, HealthSmart, HealthSCOPE and Boon-Chapman served as third party administrator for one or more of these currently unknown Doe Defendants. Upon determining their identities, Plaintiff will amend this Complaint.

## III.   JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, as well as under 28 U.S.C. § 1391(b), (c), and (d), because Defendant[s] resided, transacted business, were found, or had

agents in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District.

13.     Counts I-V are non-core matters arising in or related to a case under title 11. Plaintiff consents to entry of a final order on these claims by this Court.

14.     Jurisdiction and venue are also appropriate in this Court because Plaintiff's claims arise in part under 29 U.S.C. §§ 1001, et seq., the Employment Retirement Income Security Act ("ERISA"). This Court has jurisdiction over such claims under 28 U.S.C. § 1331.

15.     Furthermore, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's non-ERISA claims, as those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

16.     This Court has personal jurisdiction over Defendant[s].Under 29 U.S.C. § 1132(e)(2), a federal district court of the United States may exercise personal jurisdiction over a defendant where the defendant has sufficient ties to the United States. Each Defendant in this action has sufficient ties with the United States. Furthermore, each Defendant has purposefully availed itself of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer personal jurisdiction in the Northern District of Texas. The assumption of jurisdiction over Defendant[s] will not offend traditional notions of fair play and substantial justice, and is consistent with the constitutional requirements of due process.

17.     Defendant[s] had continuous and systematic contacts with the State of Texas specifically giving rise to the causes of action asserted in this complaint, sufficient to establish specific jurisdiction.

18.     In accordance with 29 U.S.C. § 1132(e)(2), venue is proper because the Northern District of Texas is the district where the plans were administered, where the breach took place,

and/or where a defendant resides or may be found. Furthermore, the non-ERISA claims arose out of a common nucleus of operative facts as the ERISA claims in this lawsuit.

19.     Venue is properly established in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this suit occurred in Texas and in this judicial district. Specifically, the majority of the relevant medical services performed by Revolution were performed in Texas, and many of the relevant medical services were performed in this district.

## IV. FACTS

### A. Background.

20.     Prior to bankruptcy, Revolution was a medical provider that offered intraoperative neurophysiological monitoring ("IONM" or "IOM") medical services to neuro, orthopedic, vascular and ear, nose and throat surgeries operating around delicate parts of the nervous system. These medical services were primarily provided in spinal, cranial, facial, throat and peripheral (*e.g.* arms, legs, hand and feet) surgeries. Their teams consisted of seasoned professionals.

21.     IONM technology allows monitoring the state of the nervous system in "real-time" during surgery to alert surgeons of potential evolving neurologic injury and may allow for corrective actions to be implemented to prevent permanent deficits, thus improving safety and surgical outcomes.[2] In other words, the technology allows a surgeon to know, while the patient is still on the table and under anesthesia, whether something has gone wrong, giving the surgeon the ability to

---

[2] *See, e.g.*, http://med.stanford.edu/neurology/divisions/neuromonitoring.html (explaining how IONM works); https://personal.utdallas.edu/~golden/ionm/ (providing another explanation of IONM); https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3763097/ (explaining "Intraoperative neurophysiological monitoring (IOM) is now an integral part of many surgical procedures."); https://www.asnm.org/page/History (describing the history of the American Society of Neurophysiological Monitoring).

address the problem without needing a second surgery or, in the worst case, crippling or even killing the patient.

22.     Healthcare providers, such as Revolution, are classified as either "in-network" medical providers or "out-of-network" medical providers. In-network medical providers have pre-determined rates with health insurance carries. Out-of-network medical providers do not have pre-determined rates with health insurance carriers. Health insurance carriers are required to pay for out-of-network services in accordance with the applicable health benefit plan.

23.     Patients pay significantly higher health insurance premiums for out-of-network health benefits in order to have access to out-of-network medical providers. Patients pay these higher premiums, at least in part, for assurance and peace of mind that they will be able to obtain necessary medical services from the physician, medical provider, and medical facility of their choice.

24.     Defendant[s] [was/were] in the business of providing, underwriting and/or administering various forms of health insurance, including individual, employer-sponsored, and governmental health insurance coverage plans. Through these plans, Defendant[s] reimburse[s] insureds for certain health care expenses, subject to the terms, conditions, and benefit limitations set forth under the plans.

25.     The claims at issue relate to health benefit plans that were either fully-insured or self-insured plans. Under a fully-insured plan, an employer or individual contracts with an insurance carrier who assumes financial responsibility for the payment of medical claims and administrative costs. Under a self-insured plan, an employer acts as the insurer and itself assumes financial responsibility for payment of medical claims. In turn these employers retain the services of insurance carriers, such as Defendant[s], to administer their self-insured health benefit plans. In administering the self-insured plans at issue in this case, Defendant[s] exercised discretionary authority over the management of the plans, the disposition of the plan assets, and the adjudication of claims.

26.     Defendant[s] underwrite[s] and/or administer[s] the health insurance benefits of numerous insureds ("Insureds") in the State of Texas and, on information and belief, in other states.

27.     On information and belief, the majority of the Insureds are covered by health benefit plans offered, underwritten, or administered by Defendant[s] as part of a private employee welfare benefit plan governed by ERISA. ERISA governs all such private employee health and welfare benefit plans, whether they are fully-insured or self-funded.

28.     Additionally, on information and belief, certain of the Insureds are covered by ERISA-exempt health benefit plans, which are issued by governmental agencies, churches, or plans (or insurance contracts) acquired by individuals, and not through a private employer.

29.     On information and belief, Defendant[s] [was/were] the claim administrator[s] who administered each and every claim at issue in this lawsuit. Defendant[s] exercised discretion, control, authority and/or oversight in the administration of each of the claims. Specifically, Defendant[s] interpreted the health benefit plan documents, distributed benefits under the plan terms, and determined the amount, if any, to pay Revolution for their medical services under these claims.

30.     Defendant[s] acted as the de facto plan administrator for each and every claim at issue in this lawsuit. Defendant[s] exercised control over the health benefit plans generally and assumed responsibility for providing plan documentation to participants and/or their agents. Defendant[s] either undertook and performed the duties of the plan administrator, and/or were delegated the administrator's duties by the health benefit plan.

31.     Revolution rendered medical services to the Insureds the subject of the claims the subject of this lawsuit and was supposed to be paid by Defendant[s] directly for providing such medical services through the issuance of benefits under the terms of the health benefit plans. Each of these services was reported by Revolution and/or Plaintiff to Defendant[s] for reimbursement purposes pursuant to the American Medical Association's Current Procedural Terminology

("CPT"), which is used by licensed providers in submitting health insurance benefit claims to third party payers, including carriers such as Defendant[s].

32.     Because the benefits payments to Revolution were based on Defendant[s] evaluation and assessment of the terms and conditions of ERISA plans, the ERISA statute governs the adjudication and disposition of these benefits payments. Further, because Defendant[s] paid plan benefits directly to Revolution as an assignee under the benefits assignments received from the Insureds, Revolution and therefore, Plaintiff, is deemed to be a plan beneficiary under ERISA, with standing to assert rights and protections under the ERISA statute.

**B.  Medical Services, Claims, and Denials.**

33.     As a matter of policy, Revolution followed the same process for each and every claim as described below.

34.     This process is routine for Revolution's business and within the health care industry, and follows the procedures set forth in the applicable health benefit plan documents.

35.     Revolution received orders from physicians requiring the scheduling of medical services to be performed by Revolution at the physician's surgical facility. The orders contained (among other things) the patient's name, contact information, and identified the medical services to be performed.

36.     As a matter of policy and procedure, before Revolution rendered reasonable and necessary medical services for any of the claims at issue, Revolution received verification by telephone from Defendant[s] that each patient was covered by a health benefit plan that provided out-of-network benefits. Revolution obtained verification from Defendant[s] that the particular procedures were covered by the relevant health benefit plan and would be paid in accordance with the health benefit plan. During the verification process, Defendant[s] failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the relevant health benefit plans,

including but not limited to anti-assignment provisions. Revolution would not have provided these services to these patients without first obtaining this verification from Defendant[s].

37.     Following the verification process, the physicians scheduled the medical services with the Insured, and informed Revolution of the relevant information to ensure that Revolution was available to perform medical services.

38.     As a matter of policy, each of the Insureds treated by Revolution signed an assignment of benefits form ("Assignment of Benefits"). **Exhibit A**, attached and incorporated herein by reference, is an example of the copy of the Assignment of Benefits each of the Insureds executed upon arrival for a procedure at Revolution's facility. The executed Assignment of Benefits transferred and assigned to Revolution the following non-exhaustive list of rights and interests: (1) the rights and interest to collect and be reimbursed for the medical service(s) performed for the Insureds; (2) the rights and interest to obtain plan documents and other related documentation and information by both provider and its attorney; (3) the rights and interest to any legal or administrative claims and causes of action; (4) the right to bring legal action, if needed, against the insurer or health benefits plan to recover costs or enforce coverage; and (5) the reasonable assistance of the Insureds in pursuing third-party payments.[3]

---

[3] *See* **Exhibit A**. The operative language of this assignment reads in part as follows:

> Signature below also consents to request Revolution Monitoring, LLC to submit all invoices associated with the professional services performed during my surgery to my designated insurer or health benefits plan, on my behalf. I consent to and request that my insurance company reimburse Revolution Monitoring, LLC directly for any invoices submitted on my behalf for professional services rendered by the above named company. If for any reason my health benefits plan or insurance company does not reimburse Revolution Monitoring, LLC directly for services rendered on my behalf and reimburses me, I agree to send all payments by my insurer for IntraOperative Neurophysiologic Monitoring and all explanation of benefits to Revolution Monitoring immediately. Failure to remit such payment would make me legally responsible for the reimbursement of Revolution Monitoring, LLC the full amount of their professional fees, co-payments, co-insurance, or deductible amounts for which I am responsible, for delivery of IntraOperative Neurophysiologic Monitoring performed during my surgery. I am also aware that I am legally held responsible for the costs of the IntraOperative Neurophysiologic Monitoring services in my health benefits plan or insurance company fails or refuses to remit the costs for such services.

39.     Pursuant to these Assignments of Benefits, Revolution (and by extension Plaintiff) have standing to pursue claims for benefits on behalf of the Insureds under ERISA, and under the laws of the State of Texas and, on information and belief, the laws of other states.

40.     Following treatment and pursuant to the Assignment of Benefits, Revolution was entitled to receive payment from Defendant[s] and directly submitted to Defendant[s] claims forms for reimbursement of services rendered to the Insureds.

41.     Defendant[s] are obligated under the health benefit plans to pay in accordance with the Insureds' rights to receive reimbursement for out-of-network care.

42.     After medical services were performed, Revolution properly and timely submitted claims through Defendant[s] designated claims handling channels. Defendant[s] either denied the claims outright or drastically underpaid the claims. Once again, Defendant[s] failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plan, including but not limited to anti-assignment provisions.

43.     After Defendant[s] either denied or underpaid the claims, Revolution and/or Plaintiff properly and timely appealed the non-payment or underpayment of the claims through Defendant[s] designated appeals channels. Defendant[s] denied each and every appeal for each and every claim at issue in this lawsuit, thereby exhausting Revolution and Plaintiff's administrative remedies. Defendant[s] failed to provide a specific reason or reasons for the adverse determinations,

---

I authorize Revolution Monitoring, LLC and/or its attorneys to file any necessary claims, demands, or appeals with my insurer or health benefits plan from a denial of reimbursement or coverage for IntraOperative Neurophysiologic Monitoring services provided on my behalf. I also assign Revolution Monitoring, LLC my rights to bring legal action, if needed, against my insurer or health benefits plan to recover the costs of or enforce my rights to coverage of IntraOperative Neurophysiologic Monitoring services under my insurance or health benefits plan under applicable law, including without limitation under the Employee Retirement Income Security Act of 1974.

I understand that Revolution Monitoring, LLC may disclose personal health information (PHI) related to receipt of professional services for the purpose of enacting such as actions as defined above. I agree to provide the necessary information to and reasonably cooperate with and assist Revolution Monitoring to pursue third party payments of my claims for IntraOperative Neurophysiologic Monitoring services.

failed to reference the specific plan provisions on which the determinations were based, failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans, including but not limited to anti-assignment provisions, and failed to identify and provide copies of the internal rules, guidelines, protocols or other similar criterion that were relied upon in making the adverse determinations. For example, Defendant[s] explanations often stated: (1) the claim was paid in accordance with the allowable amount; (2) the administrator maintained the prior decision; or, (3) the claim was processed correctly.

44.     As a result of Defendant[s] repeated failure to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans, Defendant[s] have waived and are thereby estopped from asserting as such, including by not limited to anti-assignment provisions.

45.     Under the doctrine of laches, Defendant[s] unreasonably delayed identification, assertion, or reliance on any exclusions, conditions, or other prerequisites within the health benefit plans including, by not limited to anti-assignment provisions.

46.     Despite multiple opportunities, Defendant[s] failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans. As a matter of policy, Revolution would not have provided these services had Defendant[s] identified such conditions reasonably prior to the medical procedure in question. Any attempt by Defendant[s] to assert any exclusions, conditions, or prerequisites after a substantial amount of time is prejudicial to Revolution and Plaintiff. Therefore, Defendant[s] are barred from enforcing any exclusions, conditions, or other prerequisites within the applicable health benefit plans.

47.     Revolution billed Defendant[s] approximately $749,454.00 representing the usual and customary rate for the particular medical services at issue in and around the counties in which the services were performed. On information and belief, Defendant The Hartford paid approximately

$1,983.00, or less than 1.27%, of the approximately $156,500 billed to The Hartford for the services rendered. On information and belief, all other Defendants paid nothing ($0.00) on the approximately $618,954.00 collectively billed to those Defendants.

48.     For each claim at issue, Defendant[s] failed to pay benefits in accordance with the plan documents. The plan documents establish payment for out-of-network medical services based on an "allowable amount."[4] Payment of less than 1.27% (or no payment in the case of most Defendants) for reasonable and necessary medical services is drastically lower than any other recognizable third party commercial or government pay in the health insurance industry. Through Revolution's and Plaintiff's experience and established industry standards, the payment of less than two cents on the dollar to out-of-network medical providers for the rendering of medical treatment is unprecedented. Furthermore, the course of dealings between Revolution and the respective Defendant[s] demonstrates payment reimbursements at significantly higher rates than those made for the claims alleged in this case.

49.     Moreover, based on information and belief, payment of less than 1.27% (or no payment in the case of most Defendants) for reasonable and necessary medical services is drastically lower than any possible source on which the respective health benefit plan's allowable amount language may be based.

---

[4] The phrase "allowable amount" referenced throughout Plaintiff's Original Complaint refers to the specific plan terms and plan term definitions found in the Defendant[s] Plans. Such allowable amount, for the purpose of this pleading, based on information and belief, respectively refers but is not limited to, the following: allowable amount, maximum allowable charge, allowable charge, allowable expense, eligible expenses, eligible charge, covered expenses, maximum allowance, reasonable and customary charge, schedule of maximum allowance, usual and customary, provider rate, allowed expense, participating provider rate, nonparticipating provider rate, and/or the customary charge. The allowable amounts, for the claims at issue, may be based on one or more of the following: the Administrator's sole discretion, the Plan at its sole discretion, contracts with in-network providers, the administrator's fee schedule, the average charge for the care in the area, the charge or average charge for the same or similar service, pricing data from the local insurance plan, the relative complexity of the service, in-network allowance, state or federal law, the rate of inflation using recognized measure, other reasonable limits, provider's billed charges, the insurance company's non-contracting amount, etc.

50.     Plaintiff's causes of action arise out of violations of two separate categories of insurance policies or benefit plan documents: ERISA plans and non-ERISA plans. The ERISA plans are "employee welfare benefit" plans as defined under 29 U.S.C. § 1002(3). The section of this complaint entitled "Defendant[s] Violations of ERISA" alleges facts supporting Plaintiff's causes of action for the benefit plans arising under ERISA and Counts I and II assert causes of action under ERISA. Together, the ERISA and non-ERISA plans are referred to in this complaint as the "Defendant[s] Plans."

51.     On information and belief, the non-ERISA plans within this lawsuit are categorized as government plans and private plans. Government plans are those in which state or local government entities contract with Defendant[s] to administer health benefits to the government employees. Private plans are those in which individuals contract with Defendant[s] to administer health benefits. These plans are governed by Texas state law. Counts III-V allege causes of action for these plans arising under Texas state law.  On information and belief, the overwhelming majority of Defendant[s] Plans at issue in this lawsuit call for the application of Texas law. However, Plaintiff currently lacks complete information concerning the Defendant[s] Plans or Defendant[s] affiliates or agents responsible for the failure to pay in accordance with the Defendant[s] Plan documents. Accordingly, Plaintiff reserves the right to amend this complaint in order to address any state-law claims that may arise under or be governed by the laws of a state other than Texas.

### C.  Defendant[s] Violation of ERISA.

52.     29 U.S.C. § 1002(8) defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Revolution, as assignee of the ERISA insured members, is the beneficiary for all purposes throughout this Complaint. Plaintiff, as the Collection Agent for Revolution's Liquidating Trust, is likewise a beneficiary for all purposes throughout this Complaint.

53.     29 U.S.C. § 1002(21)(A)(iii) determines that one is a "fiduciary" to the extent that the person "has any discretionary authority or discretionary responsibility in the administration" of a health benefit plan. Defendant[s] functioned as fiduciaries with respect to the plans at issue in this case, because Defendant[s] exercised discretion, authority, and control in determining whether and to what extent benefits would be paid to Revolution. Therefore, Defendant[s] [is a fiduciary / are fiduciaries] to Revolution and, by extension, Plaintiff.

54.     With respect to those of its health benefit plans sponsored by private employers, Defendant[s] [is/are] subject to ERISA (29 U.S.C. §§ 1001, et seq.), and its governing regulations.

55.     Under ERISA, Defendant[s] cannot systematically deny coverage for services (or types of services) unless the applicable health benefit plan contains an express exclusion specifying that such services are not covered under that plan's terms.

56.     Under ERISA, Defendant[s] cannot systematically underpay for services and must make payment of benefits in the manner and amounts required under the terms of the applicable health benefit plan(s)

57.     In offering and administering the ERISA plans and making payment decisions, Defendant[s] function[s] as a "plan administrator" as that term is defined under ERISA, in that Defendant[s] interpret and applies the plan terms, makes all coverage decisions, and/or provides for payment to Insureds and/or their providers.

58.     Defendant[s] function[s] as a "plan administrator" when they insure or administer a group health plan, when they are designated as a plan administrator for such a plan, or when they determine appeals and address grievances within the meaning of such terms under ERISA.

59.     As a plan administrator, Defendant[s] also assume various obligations specified under ERISA, including providing its Insureds and their assignees with a Uniform Medical Policy ("UMP"), a document designed to describe in layperson's language the material terms, conditions

and limitations of the plan. The full details of the plan, which are summarized in the UMP, are contained in the Evidence of Coverage that governs each Insured's plan.

60.     If the employer, or an entity other than Defendant[s], are deemed to be the plan administrator, Defendant[s] remain responsible for ensuring that the UMP complies with the law under its duties as a co-fiduciary as provided in ERISA, 29 U.S.C. § 1105.

61.     Defendant[s] also exercise discretionary authority and control in its administration of the ERISA plans, over claims processing and adverse benefit determinations with respect to claims of the Insureds and their assignees, and in their interaction with Insureds and their assignees. Therefore, Defendant[s] also function as fiduciaries as defined under ERISA. Irrespective of their status as plan administrator(s), Defendant[s] are liable for breach of their obligations as fiduciaries, as provided in ERISA 29 U.S.C. § 1109, because they exercise discretionary authority and/or control.

62.     Defendant[s] fiduciary functions include, for example, preparation and submission of Explanation of Benefits statements ("EOBs"); determinations regarding claims for benefits and coverage; oral and written communications with Insureds, their assignees, and medical providers regarding coverage and claims determinations; and the processing, management, review, decision making and disposition of appeals and grievances under Defendant[s] Plans.

63.     Under ERISA, Defendant[s] are required, among other things, to comply with the terms and conditions of its plans; to afford the Insureds, or their providers where a valid assignment of benefits exists, an opportunity to obtain a "full and fair review" of any denied or reduced reimbursements; to establish and follow reasonable claims procedures prescribed in ERISA regulations; and to make appropriate and non-misleading disclosures to Insureds, their assignees, and providers. Such disclosures include accurately setting forth plan terms; explaining the specific reasons why a claim is denied and the internal rules and evidence underlying such determinations;

disclosing the basis for its interpretation of plan terms; and providing appropriate data and documentation concerning its coverage decisions.

64.     For example, the comprehensive ERISA regulatory scheme governs the timing and notification of benefits determinations by Defendant[s]; the manner and content of notification of benefits determinations; and the procedure, timing and manner of notification requirements concerning appeal of adverse benefits determinations by Defendant[s].

65.     With respect to post-service reimbursement claims, ERISA regulations require Defendant[s] to notify claimants of an "adverse benefit determination," no later than 30 days after receipt of a claim. Under ERISA, the term "adverse benefit determination" is defined as follows:

> a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate.

29 C.F.R. § 2560.503-1(m)(4).

66.     ERISA's reasonable claims procedure regulations further require Defendant[s], for example, to set forth the following information in an understandable manner in all adverse benefit determinations to claimants: (a) the specific reason or reasons for the determination; (b) reference to the specific plan provisions on which the determination is based; (c) a description of any additional material or information necessary to perfect the claim and an explanation of why such information is necessary; (d) a description of the plan's review procedures and the applicable time limits, including a statement advising of the right to bring a civil action under ERISA; (e) a statement regarding any internal rule, guideline, protocol, or other similar criteria relied upon in making the determination;

and (f) a statement regarding the scientific or clinical judgment underlying a determination based on a medical necessity, experimental treatment or similar exclusion or limit. 29 C.F.R. § 2560.503-1(g).

67.     Commencing in or about 2015, Defendant[s] began inappropriately denying certain claims submitted by Revolution seeking payment for IONM medical services provided to Insureds. The services were medically appropriate and necessary, covered by the applicable plan terms, and the claims should have been paid to Revolution as the Insureds' lawful assignee.

68.     Without proper justification and in violation of the plan terms, Defendant[s] stopped paying Revolution for many services provided to Insureds.

69.     Defendant[s] indiscriminately denied payment for most claims and services at issue based on an unsupported and erroneous assertions,

70.     Defendant[s] treatment of Revolution's appeals of adverse benefits determinations was contrary to the ERISA statute, applicable regulations, and the terms of applicable health benefit plans.

71.     For example, Defendant[s] made claims determinations that had the effect of reimbursing less than the percentage of actual charges required by the applicable health benefit plans.

72.     Further, Defendant[s] made such claims determinations without valid evidence or information to substantiate such determinations and/or in an arbitrary fashion, and did not provide a "full and fair review" of denied or reduced reimbursements.

### D.  Revolution's Bankruptcy.

73.     Defendant[s] refusals to pay Revolution continued through 2018, when Defendant[s] misconduct forced Revolution to cease operations and seek relief under the Bankruptcy Code.

74.     Between September 27, 2018 and October 5, 2018, Revolution filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (Bankruptcy Code) in the Northern District of Texas.

75.     On July 23, 2019, the Court entered an Order confirming the Debtors' Second Joint Plan of Reorganization ("Plan"), which among other things, provided for the creation of a Liquidating Trust, appointment of Jeffrey H. Mims as Liquidating Trustee,  and the appointment of the Plaintiff MedARC, LLC to serve as Collection Agent.  In accordance with the Plan, on August 5, 2019, the Plan Supplement and Liquidating Trust Agreement were filed.

76.     Pursuant to the Plan and Plan Supplement, Plaintiff has standing to pursue Revolution's claims against these Defendant[s], and any net recovery will be used to pay creditors of the Debtors pursuant to the Plan and Plan Supplement.

## V.  CAUSES OF ACTION

### *ERISA*

## COUNT I – Provider's Claims Under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3)

77.     The allegations contained in Paragraphs 1 through 76  are re-alleged and incorporated herein as if set forth verbatim.

78.     Plaintiff brings this action as a beneficiary to recover benefits due under health benefit plans governed by ERISA under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3).

79.     The Insureds remain personally liable for the billed charges incurred as a result of reasonable and necessary medical services received. Defendant[s] failure to pay in accordance with the plan document resulted in actual injury to the Insureds.

80.     Debtors received valid assignments of all rights and benefits held by the Insureds pursuant to ERISA plans administered by Defendant[s] as set forth herein. Such assignments

include all of the Insureds' rights and benefits with respect to out-of-network treatments provided by Debtors.

81.     The execution of such assignments confers upon Debtors beneficiary status under Section 502(a) of ERISA. Plaintiff, as Collection Agent for the Liquidating Trustee of the Debtors, likewise retains beneficiary status pursuant to the Bankruptcy Plan.

82.     Through its course of dealings with Debtors and Plaintiff as set forth above, Defendant[s] waived any right to enforce any anti-assignment provisions which may exist in the health benefit plans at issue.

83.     Defendant[s] functioned at all relevant times as the "plan administrator" for the applicable health benefit plans within the meaning of that term under ERISA, and continue to function in that capacity. Defendant[s] function as a "plan administrator" when they insure or administer a group health plan, when they are designated as a plan administrator for such a plan, or when they determine appeals and addresses grievances within the meaning of such terms under ERISA.

84.     Defendant[s] exercised (and continue to exercise) discretionary authority and control in its administration of the relevant health benefit plans and through interactions with Insureds and Debtors in the manner described herein. Therefore, Defendant[s] also functions as a "fiduciary" within the meaning of that term under ERISA.

85.     For each claim at issue, Defendant[s] abused their discretion in administering the claims, breached the terms of the benefits plan documents, and violated their legal obligations as a plan administrator and/or fiduciary under ERISA and federal common law each time they failed to make payment, made only partial payment, or delayed payment of benefits, without complying with ERISA requirements governing the claims process and adverse benefit determinations.

86.     Defendant[s] lack of disclosure to the Insureds and to Revolution or Plaintiff relating to adverse benefit determinations, as required under ERISA, violated its legal obligations.

87.     Revolution and Plaintiff properly appealed the claims at issue to the extent any such appeals were required, thus exhausting all administrative remedies.

88.     Alternatively, all required appeals should be deemed exhausted or excused by virtue of Defendant[s] numerous procedural and substantive violations described herein, which deprived Revolution or Plaintiff of meaningful access to administrative remedies.

89.     Defendant[s] breaches and violations have resulted in damages to Revolution (and by extension, Plaintiff) in an amount that will be proven at trial, but which Plaintiff estimates exceeds $749,454.00.

90.     As a result of the foregoing, Plaintiff seeks payment of unpaid benefits on the applicable claims and interest thereon from Defendant[s] back to the dates when the claims were originally submitted to Defendant[s].

91.     Additionally, Plaintiff seeks the disgorgement of the profits or fees Defendant[s] have earned by denying and/or delaying payment of Plaintiff's claims through conduct in violation of ERISA.

92.     Plaintiff further requests reasonable attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant[s].

## COUNT II – Violation of Fiduciary Duties of Loyalty and Care

93.     The allegations contained in Paragraphs 1 through 76 are re-alleged and incorporated herein as if set forth verbatim.

94.     Count II is brought under 29 U.S.C. § 1132(a)(2), 29 U.S.C. § 1104, and 29 U.S.C. § 1109.

95.     Debtor received valid Assignments of Benefits held by the Insureds pursuant to ERISA plans administered by Defendant[s] as set forth herein. Such assignments confer on Revolution (and by extension Plaintiff) all of the Insureds' rights and benefits with respect to out-of-network medical services provided by Revolution.

96.     The execution of such assignments confers upon Revolution the status of beneficiary under Section 502(a) of ERISA.  Plaintiff, as Collection Agent for Revolution's Liquidating Trustee, likewise retains beneficiary status pursuant to the Bankruptcy Plan.

97.     Defendant[s] acted as fiduciaries to the beneficiaries—including Insureds and Plaintiff—of the plans it administered, including the plans of Insureds that received treatment or medical services from Debtors.

98.     Specifically with respect to such benefits plans, Defendant[s] acted as fiduciaries to beneficiaries (including Revolution and Plaintiff) because Defendant[s] exercised discretion in determining the amounts of plan benefits that would be paid to plan beneficiaries. The exercise of discretion with regard to determination of plan benefits is an inherently fiduciary function, and confers the imposition of the duties of loyalty and care.

99.     The Insureds, and Plaintiff by way of assignment of the rights of the Insureds to Revolution and then to Revolution's Liquidating Trust, may sue in a representative capacity on behalf of the individual Defendant[s]  plans at issue in this lawsuit for relief with respect to breaches of fiduciary duties by Defendant[s].

100.     As a fiduciary's of plans governed by ERISA, Defendant[s] owe the beneficiaries of such plans (including Revolution and Plaintiff) a duty of care, defined as an obligation to act prudently, with the care, skill, prudence, and diligence that a prudent administrator would use in the conduct of an enterprise of like character.

101.    Additionally, as set forth in Sections 404(a)(1)(B) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(B) and (D), ERISA fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan.

102.    Defendant[s] violated the fiduciary duty of care it owed to Revolution and Plaintiff as beneficiaries of the plans by their conduct set forth above, such as, making adverse benefit determinations with regard to payment or denial of plan benefits to Debtors contrary to and based upon reasons outside of the relevant plans, ERISA, and regulations promulgated thereunder, including, upon information and belief, Defendant[s] own financial interest.

103.    As a fiduciary of plans governed by ERISA, Defendant[s] owe the beneficiary of such plans (including Revolution and Plaintiff) a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of the beneficiaries. For example, Defendant[s] are prohibited from making benefits determinations for the purpose of enhancing its own profitability at the expense of its beneficiaries. Section 406 of ERISA, 29 U.S.C. § 1106.

104.    Defendant[s] violated the fiduciary duty of loyalty it owed to Revolution and Plaintiff as beneficiary of the relevant plans by its conduct set forth above, such as making adverse benefit determinations with regard to payment or denial of plan benefits to Revolution or Plaintiff contrary to and based upon reasons outside of those permitted by the health benefit plans, ERISA, and regulations promulgated thereunder, including, upon information and belief, Defendant[s] own financial interest.

105.    Revolution and Plaintiff have exhausted administrative remedies with respect to the claims at issue through completion of the relevant internal appeals processes, to the extent necessary.

106.    Alternatively, all appeals should be deemed exhausted by virtue of Defendant[s] numerous procedural and substantive violations described herein, which deprived Revolution and Plaintiff of meaningful access to administrative remedies.

107.    As a result of the foregoing, Plaintiff is entitled to restitution and injunctive and declaratory relief pursuant to 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1132(a)(3), based upon Defendant[s] violation of its fiduciary duties.

108.    Additionally, Plaintiff seeks the disgorgement of the profits or fees Defendant[s] have earned by denying and/or delaying payment of Plaintiff's claims through conduct which violated its fiduciary duties under ERISA.

109.    Further, Plaintiff is entitled to be made whole in the form of monetary compensation for the losses it incurred from Defendant[s] breaches of its fiduciary duties owed to Plaintiff, including interest back to the dates that the claims were originally submitted to Defendant[s].

*Texas State Law*

**COUNT III – Breach of Contract**

110.    The allegations contained in Paragraphs 1 through 76 are re-alleged and incorporated herein as if set forth verbatim.

111.    Plaintiff brings this action as an assignee to recover benefits due under Texas state law. Plaintiff is entitled to recover benefits for medical services provided to patients by Revolution, from whom Revolution received an assignment of benefits. Revolution received an assignment of benefits for each claim at issue.

112.    With respect to government plans, Texas government entities entered into contracts with Defendant[s] to administer health benefits to their employees. Under these contracts, Defendant[s] agreed to administer out-of-network benefits in accordance with the health benefit plans. Specifically, Defendant[s] agreed to pay claims in accordance with the allowable amount. The

allowable amount establishes payment for out-of-network medical services and is found within the health benefit plan. In turn, governmental employees paid higher premiums for out-of-network coverages and benefits.

113.    These premiums constitute good and valuable consideration that Defendant[s] received from their Insureds and/or their employers in exchange for providing certain insurance benefits under the health benefit plans, including the out-of-network coverage and benefits.

114.    Government employees who are Insureds are third-party beneficiaries to contracts entered between Defendant[s] and Texas government entities. Government employees who are Insureds are parties to the health benefit plans entered between Texas government entities and its employees.

115.    Moreover, under Texas state law, multiple instruments may be construed together and treated as one contract. Defendant[s] and government entities enter into contracts for the ultimate purpose of administering health benefits to government employees in accordance with the health benefit plans. Specifically, Defendant[s] agree to pay claims in accordance with the allowable amount found within the applicable health benefit plans. Defendant[s] must reference the health benefit plans to properly determine the allowable amount.

116.    Revolution provided medical treatment to the Insureds, and submitted appropriate bills directly to Defendant[s] for said medical services in accordance with the terms of the health benefit plans and Texas law.

117.    Revolution has otherwise complied with all terms of the health benefit plans, the benefits of which have been lawfully assigned to Revolution, including the right to assert legal claims to enforce rights thereunder.

118.    Defendant[s] failure to pay out-of-network benefits in accordance with the allowable amounts within the health benefits plans breached the contractual agreements to administer health benefits to government employees.

119.    With respect to private plans, individuals contracted with Defendant[s] to administer health benefits. Under these contracts, Defendant[s] agreed to provide out-of-network benefits for medical services rendered. In turn, individuals paid higher premiums for out-of-network coverages and benefits.

120.    Defendant[s] failure to pay out-of-network benefits in accordance with the allowable amounts within the health benefit plans breached the contractual agreements to administer health benefits to individuals.

121.    Patients remain personally liable for the billed charges incurred as a result of reasonable and necessary medical services received. Defendant[s] failure to pay in accordance with the health benefit plans resulted in actual injury to the patient.

122.    As a direct or proximate result of Defendant[s] material breaches of contract and non-payment for services duly rendered, Revolution, and by extension Plaintiff, have suffered damages.

## COUNT IV – Promissory Estoppel

123.    The allegations contained in Paragraphs 1 through 76 are re-alleged and incorporated herein as if set forth verbatim.

124.    Plaintiff brings this promissory estoppel cause of action for all claims at issue in this lawsuit, including claims under ERISA and non-ERISA plans. Plaintiff brings this cause of action on behalf of the Liquidating Trustee of Revolution's estate, separate and apart from any assignment of benefits.

125.    As a matter of policy and procedure, before Revolution rendered reasonable and necessary medical services for any of the claims at issue, Revolution received verification by telephone from Defendant[s] that each of the Insureds was covered by a health benefit plan. Revolution obtained verification from Defendant[s] that the particular procedures were covered by the applicable health benefit plan. Additionally, Defendant[s] verified Revolution would be paid a reasonable amount for the services rendered. Debtors would not have provided these services to these Insureds without first obtaining this verification from Defendant[s].

126.    Revolution substantially and reasonably relied to its detriment on the promises made by Defendant[s]. Revolution would not have provided services without such promises. Defendant[s] knew or should have known that Revolution would rely upon the promises.

127.    Because Revolution reasonably relied on Defendant[s] promises, and such reliance was foreseeable to Defendant[s], Revolution (and by extension Plaintiff) suffered damages in an amount to be determined at trial.

**COUNT V – Quantum Meruit**

128.    The allegations contained in Paragraphs 1 through 76 are re-alleged and incorporated herein as if set forth verbatim.

129.    Revolution provided services and other things of value to Defendant[s] and the Insureds (to wit medical services).

130.    Defendant[s] and Insureds accepted the services or other things of value.

131.    Defendant[s] and Insureds have not paid for such services and things of value.

132.    In the alternative to breach of contract, Plaintiff, as Collection Agent for the Liquidating Trustee of Revolution's estate, therefor is entitled to payment from Defendant[s] for the reasonable value of the services rendered in an amount to be proven at trial.

## VI.  REQUEST FOR ATTORNEYS' FEES AND COSTS

133.    The allegations contained in Paragraphs 1 through 132 are re-alleged and incorporated herein as if set forth verbatim.

134.    29 U.S.C. § 1132(g)(1) authorizes an award of reasonable attorneys' fees and costs of an ERISA action.

135.    Texas Civil Practice and Remedies Code § 38.001(8) further authorizes an award of reasonable attorneys' fees and costs from a corporation on a claim arising from an oral or written contract.

136.    As a result of the above-described conduct by Defendant[s], Plaintiff was required to retain the services of counsel and necessarily incurred reasonable attorneys' fees and costs in prosecuting this action.

137.    Plaintiff anticipates incurring additional reasonable attorneys' fees and costs in association with this lawsuit.

138.    Plaintiff therefore requests an award of reasonable attorneys' fees and costs against Defendant[s] in an amount that will be calculated at the conclusion of this action.

## VII.  PRAYER FOR RELIEF

Plaintiff respectfully prays that Defendant[s] be required to appears and answer this Original Complaint and that, after a final resolution on the merits, this Court enter judgment in favor of Plaintiff and against Defendant[s]:

A.    Finding that Defendant[s] breached the terms of the health benefit plans, and awarding compensatory damages to Plaintiff for unpaid benefits, as well as awarding declaratory relief with respect to Defendant[s] violations of ERISA, including a declaration that Defendant[s]  claim processing methodology with respect to claims assigned to Plaintiff violates ERISA;

B.    Finding that Defendant[s] breached their fiduciary obligations owed to Plaintiff under ERISA and awarding compensatory damages resulting therefrom;

C.      Finding that Defendant[s] failed to provide "full and fair review" of claims denials or reductions to Plaintiff as required under ERISA and its implementing regulations, and awarding compensatory damages and declaratory relief with respect to Defendant[s] violations of ERISA;

D.      Finding that Defendant[s] violated federal claims procedures under ERISA and that "deemed exhaustion" under the ERISA regulations is in effect as a result of Defendant[s] actions;

E.      Ordering Defendant[s] to disgorge to Plaintiff the profits or fees they have earned by denying and/or delaying payment of Plaintiff's claims through conduct in violation of ERISA;

F.      Awarding Plaintiff compensatory damages on all claims in the amount to be established at trial;

G.      Awarding Plaintiff its attorneys' fees and costs on its ERISA claims. *See* 29 U.S.C. § 1132(g)(1) (allowing a court, in its discretion to award "a reasonable attorney's fee and costs of action to either party.");

H.      Awarding Plaintiff its attorneys' fees and costs on its state law claims pursuant to Texas Civil Practices and Remedies Code § 38.001(8);

I.      Awarding Plaintiff punitive and exemplary damages against Defendant[s] in an amount to be proven at trial;

J.      Awarding Plaintiff pre-judgment and post-judgment interest at the highest rate allowed plus its taxable court costs.

K.      Awarding Plaintiff all such other and further relief to which Plaintiff may be justly entitled as the Court deems just and proper under the circumstances.

Dated: September 24, 2020

By:   */s/ Kenneth W. Biermacher*

**Kenneth W. Biermacher**
State Bar No.  02302400
kbiermacher@krcl.com
**Lawrence T. Bowman**
State Bar No. 00788993
lbowman@krcl.com
**Donald A. Waltz**
State Bar No. 24048061
dwaltz@krcl.com
**Andrew D. Robertson**
State Bar No. 24090845
drobertson@krcl.com

**KANE RUSSELL COLEMAN LOGAN PC**

901 Main Street, Suite 5200
Dallas, Texas  75202
Tel: (214) 777-4223
Fax: (214) 777-4299

*Attorneys for Plaintiff*